Adcock *et al. v.* Patton *et al.*, and Patton *et al. v.* Adcock *et al.*

DAVID ADCOCK and WIFE *v.* PATTON & DURHAM *et al.*, and PATTON & DURHAM *v.* DAVID ADCOCK and WIFE *et al.*

1. UNREGISTERED TITLE BOND IS NO OBSTACLE TO A SALE OF LAND BY EXECUTOR AGAINST VENDOR. A bond for title given upon the sale of land does not pass the legal title to the vendee, and, if unregistered, imposes no impediment to the rights of a judgment creditor of the vendor.

2. SURETIES TO A JUDGMENT. The sureties against whom, and the principal, a bank has recovered judgment, may, by agreement with the bank, deposit their note with the bank's attorney, bid off the land at the sale made under execution issued on the judgment, and then have the note discounted to settle their bid.

FROM DEKALB.

Appeal from the Chancery Court. B. M. TILLMAN, Chancellor.

JOHN H. SAVAGE for Adcock.

R. CANTRELL for Patton and & Durham.

DEADERICK, J., delivered the opinion of the Court.

D. Adcock and wife file their bill to assert and establish title to certain lands in DeKalb County, for which title bond was executed by Wm. Adcock to

Jacob Adcock, and which title bond was assigned by Jacob to Sarah Adcock, wife of David. This bill was filed in the Chancery Court at Smithville in December, 1860.

The cross bill, after answer, was filed, claiming that complainants (Patton & Durham) had purchased the lands in August, 1860, at execution sale upon a judgment rendered in DeKalb Circuit Court, in favor of the Bank of Tennessee, against Jacob Adcock, drawer, and Wm. Adcock, first endorser, the land having been sold as the property of William and Jacob Adcock. Two questions are presented in the Record:

1. It is insisted by complainants in the original bill that the bond for title from William to Jacob, dated November 18, 1853, and assigned by Jacob to Sarah Adcock December 27, 1853, vested her with the title, and that Patton & Durham therefore acquired no title to the land by virtue of their purchase under the execution sale.

The bond stipulates that William was to retain as much of the land and timber as he chose during his life. S. Adcock (a brother of David) and Patton state that David lived on the land from the time of his purchase up to the year 1860, when it was sold. Durham testified that William continued in possession from the time of the alleged sale until 1863 or 1864, and that it is in proof that David was generally insolvent from the time he was fully grown. Adcock also proves the execution of the bill of sale, and

that Sarah paid Jacob $75 to $100, and was to pay the balance as he needed it. The title bond, however, was never registered. And Elijah Allen testifies that he heard the contract between David and Jacob in 1858, and saw a bond, and David and Jacob were both embarrassed and insolvent. This transfer of the title bond by Jacob to David is dated December 27, 1858, but three days before the date of the bill of exchange upon which Jacob was subsequently sued in the Circuit Court of DeKalb County, but whether the transfer was intended to hinder or delay creditors, it did not vest Sarah Adcock with any legal title to the land. This remained in William Adcock, subject to execution for his debts, and interposed no impediments to the rights of his judgment creditors.

But it is further insisted that the debt to the bank was paid and satisfied before the levy of the execution upon the land, and therefore such sale and levy were void.

T. B. Murray, who was the attorney for the bank, states that he obtained the judgment against Jacob and William Adcock and Patton & Durham, the complainants in the cross bill, and thinks the judgment was paid by the renewal of the note in bank by Patton & Durham, and some money paid by them; and that he gave permission to them or to some one for their benefit to run the execution upon the judgment. He adds that his recollection of the transaction is not distinct. Hallum, the sheriff,

states that he levied the execution upon the land and sold it, and that he does not recollect of their running an execution against the land that had been satisfied.

The Record of the proceedings in the Circuit Court shows that on the 18th of June, 1860, an execution was returned by Hallum, showing that he had levied the same upon a negro and other personal property of Durham & Patton, and at the instance of plaintiffs in the execution, had released the levy and returned the execution unsatisfied. It is also shown by said Record that on the 28th of June, 1860, ten days after the return of the original execution in the case, an alias execution was issued and was levied by said sheriff upon some personal property, and upon the land in controversy. The personal property was sold July 17, 1860, for $91.50, and the land on the 6th of August, 1860, and the balance was settled with the bank's attorney August, 1860, including the price of the personal property.

It further appears from the Record in this cause that Patton & Durham executed their note to the bank on the 18th of June, 1860 (the day of the return of the original execution unsatisfied), payable at Sparta, four months after date, for $1,100. Patton & Durham prove that they made the arrangement with Murray, the bank attorney, to have the execution issued and levied upon the land, for the purpose of subjecting it to sale for the bank debt, so that the property of William and Jacob Adcock

should pay the debt for which they were primarily liable, and they gave their note to the bank for the amount of the debt as collateral security, and not in extinguishment of the debt. This they prove was the agreement as understood at the time, and that they were to buy the land, and then the bank was to discount the note. This arrangement was afterwards carried out, and the note discounted, and R. Cantrell, agent of the bank gave them a receipt against the execution. R. Cantrell corroborates the statements of ·Patton & Durham. He says he. was employed by them as attorney, and they and he made ·the arrangement with Murray, the bank's attorney, for Patton & Durham to bid the bank debt upon the land, and that the note was then to be discounted by the bank. Cantrell says that he was then acting as the attorney of Patton & Durham, and knew at the time that if they paid off the bank debt before sale they would have no right to sell upon a satisfied judgment; that Patton & Durham were directed by him to deposit their note with the bank's attorney, bid off the land, and then have the note discounted to settle their bid. And this arrangement was expressly made to avoid the satisfaction of the judgment before the sale, and it was so understood by Patton & Durham and Murray as he (Cantrell) understood at the time.

We are satisfied that such was the arrangement and understanding of the parties to it, at the time, as no other or different one would have effectuated

Adcock *et al. v.* Patton *et al.*, and Patton *et al. v.* Adcock *et al.*

the objects manifestly intended to be attained.    The execution ·was returned unsatisfied to the June term of the Court, and on the day of its return the note bears date, which was deposited with . Murray.    It was incompetent for Patton & Durham to make this arrangement for their own protection.

The result is, that the Chancellor's decree granting relief as prayed for in the original bill, and dismissing the cross bill, is reversed.    The original bill will be dismissed and relief will be granted the complainants in cross bill as prayed for.    The costs will be paid by defendants to cross bill, subject to rights of Sarah Adcock, as owner of the interest of Patton in the land which has been transferred to her.